# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN JARED WILLIAMS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No. CV 16-00031-RAO<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.　**INTRODUCTION**

Plaintiff Stephen Jared Williams ("Plaintiff") challenges the Commissioner's[1] denial of his applications for supplemental security income ("SSI") and disability insurance benefits ("DIB").[2] For the reasons stated below, the decision of the Commissioner is REVERSED and the action is REMANDED for further proceedings consistent with this Order.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill, the current Acting Commissioner of Social Security, is hereby substituted as the defendant herein.

[2] According to Plaintiff, he effectively withdrew his claim for DIB at the hearing when he amended his alleged disability onset date to April 22, 2014. (Joint Statement ("Joint Stmt.") at 2; Administrative Record ("AR") 33-34.)

## II. PROCEEDINGS BELOW

On April 22, 2014, Plaintiff protectively applied for DIB and SSI alleging disability beginning September 1, 2010. (AR 139-52.) His applications were denied on June 25, 2014. (AR 68-87.) On July 30, 2014, Plaintiff filed a written request for hearing, and a hearing was held on July 1, 2015. (AR 28-67, 94-95.) Represented by counsel, Plaintiff appeared and testified, along with an impartial medical expert and an impartial vocational expert. (AR 28-67.) At the hearing, Plaintiff amended the alleged disability onset date to April 22, 2014. (AR 33-34.) On July 17, 2015, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, pursuant to the Social Security Act,[3] since September 1, 2010.[4] (AR 24.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (AR 1-7.) Plaintiff filed this action on January 4, 2016. (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (AR 16.) At **step two**, the ALJ found that Plaintiff has a severe impairment, namely, depression/bipolar disorder. (AR 17.) At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AR 18.)

///

---

[3] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

[4] The ALJ makes no reference to the amended alleged disability onset date in the decision. (AR 14-24.)

Before proceeding to step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> [P]erform a full range of work at all exertional levels but with the following non-exertional limitations: perform no work tasks involving contact with the public and no tasks requiring more than occasional interactions with co-workers and/or supervisors.

(AR 19.)

At **step four**, the ALJ found that Plaintiff is unable to perform any past relevant work. (AR 22-23.) At **step five**, based on Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (AR 23-24.) Accordingly, the ALJ found that Plaintiff was not disabled. (AR 24.)

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence, and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006)). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the

Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotations omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see also Robbins,* 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003)).

## IV. **DISCUSSION**

Plaintiff contends that the ALJ: (1) erred in assessing Plaintiff's mental RFC by improperly rejecting the findings and opinions of his treating psychiatrist and improperly relying on the opinion of the non-examining medical expert; and (2) erred in the credibility findings. (Joint Stmt. at 2-10, 23-27.) The Commissioner contends that the ALJ: (1) properly evaluated the medical opinions and properly assessed Plaintiff's mental RFC; and (2) properly discounted Plaintiff's credibility. (Joint Stmt. at 10-23, 27-35.) For the reasons below, the Court agrees with Plaintiff.

### A. **The ALJ Erred in Evaluating the Medical Opinion Evidence**

Plaintiff argues that the ALJ failed to provide legally sufficient reasons for rejecting the findings and opinion of his treating psychiatrist, Dr. Bonnici, regarding his mental impairments and limitations, and gave improper weight to the opinion of the medical expert, Dr. Akins. (Joint Stmt. at 3-9.) The Commissioner argues that the ALJ properly evaluated the medical evidence, including the opinion of Dr. Bonnici. (Joint Stmt. at 10-23.)

#### 1. *Dr. Bonnici's Opinion*

According to the treatment records, Dr. Bonnici started treating Plaintiff in July 2014 at the San Fernando Valley Community Mental Health Center/Los Angeles

County Department of Mental Health Center ("LACDMH"). (AR 295.) Prior to seeing Dr. Bonnici, Plaintiff was brought involuntarily to the hospital on April 16, 2014, for feeling out of control and like he was going to hurt someone, and was psychiatrically hospitalized from April 17-21, 2014. (AR 268-82.) He subsequently underwent an initial assessment at LACDMH in June 2014, and was assessed with slowed speech, dysphoric and irritable mood, blunted affect, moderately impaired judgment and insight, and isolative tendencies. (AR 286-87.) He was diagnosed with bipolar disorder, most recent manic without psychotic features, with a Global Assessment of Functioning ("GAF") score of 37. (AR 287.) At a July 2014 appointment, Dr. Bonnici noted that Plaintiff complained of worsening depressive symptoms in the context of severe social stressors and requested a change in medication. (AR 295.) He diagnosed Plaintiff with bipolar NOS and PTSD, with a GAF score of 30. (AR 296.) He changed Plaintiff's medication and referred Plaintiff to therapy. (AR 296.)

Dr. Bonnici continued to see Plaintiff once or twice a month through the time of the hearing and consistently assigned GAF scores of 30. (AR 58, 283-303, 309-13.) On February 13, 2015, Dr. Bonnici completed a Medical Source Statement of Ability to do Work-Related Activities (Mental). (AR 305-07.) Dr. Bonnici opined that Plaintiff had moderate limitations in carrying out detailed instructions and making judgments on simple work-related decisions; moderate limitations in interacting appropriately with the public and responding appropriately to changes in a routine work setting; and marked limitations in interacting appropriately with supervisors and co-workers and responding appropriately to work pressures in a usual work setting. (AR 305-06.) He noted findings of impaired judgment, irritability, depression, anxiety, low frustration tolerance, and difficulty maintaining a schedule, all secondary to mental illness. (AR 305-06.)

///

///

### *2. Dr. Akins' Opinion*

At the hearing, Dr. Akins testified as a medical expert. (AR 35-48.) He testified that the record supports a bipolar diagnosis, with a marked impairment in social functioning, particularly in the areas of dealing with the public, supervisors, and coworkers. (AR 35-36.) He opined that Plaintiff would "probably be able to work" with no public contact, limited contact with coworkers, and occasional contact with supervisors, and he could perform detailed tasks. (AR 36-37.) He also opined that Plaintiff had "mild to moderate issues in [the] areas of concentration and work adjustment." (AR 36.) When asked by Plaintiff's attorney whether Plaintiff would be able to handle the work pressures of a usual work setting, Dr. Akins testified that he did not think Plaintiff could handle a high pressure work environment, but did not "know that that rules out him not being able to perform adequately in a low stress environment where the pace of demands on him are lessened." (AR 45-46.)

### *3. Pertinent Law*

Courts give varying degrees of deference to medical opinions based on the provider: (1) treating physicians who examine and treat; (2) examining physicians who examine, but do not treat; and (3) non-examining physicians who do not examine or treat. *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). Most often, the opinion of a treating physician is given greater weight than the opinion of a non-treating physician, and the opinion of an examining physician is given greater weight than the opinion of a non-examining physician. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). When a treating physician's opinion is contradicted by another opinion, the ALJ may only reject it by providing specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 633. "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (citation omitted). A non-examining physician's opinion can constitute substantial

evidence if it is supported by other evidence in the record and is consistent with it. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (citation omitted).

### *4.    Discussion*

The ALJ found Dr. Bonnici's opinion "not . . . persuasive or controlling," and accepted the conclusions of Dr. Akins. (AR 21-22.) The ALJ rejected Dr. Bonnici's opinion, which she interpreted as "effectively indicat[ing] that [Plaintiff] is unable to work," on the following grounds: (1) his findings did not support a disabling condition; (2) the limitations were inconsistent with his mild clinical observations, lack of significant treatment, and the record as a whole; and (3) he took Plaintiff's subjective complaints at face value. (AR 21.) The reasons given by the ALJ for rejecting Dr. Bonnici's opinion are not specific and legitimate and lack substantial support in the record.

An ALJ may discount a treating physician's opinion when it contradicts his treatment notes. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). The ALJ found that Dr. Bonnici's findings did not support a determination that Plaintiff's mental condition is of disabling severity, and pointed to Dr. Bonnici's January 2015 progress note, where Plaintiff was described as "'calm, cooperative, and friendly with good eye contact' and otherwise displayed mild clinical findings, but still received a GAF score of 30." (AR 21, 297.) The ALJ failed to mention, for example, that at that same visit, Plaintiff reported that he continued to struggle with quickness to anger and frustration, and he was "anxious and on edge" often; on examination, Plaintiff's affect was "dysthymic appearing;" Dr. Bonnici noted Plaintiff's "traumatic history" of several psychiatric hospitalizations for threats against others; and Dr. Bonnici adjusted Plaintiff's antipsychotic medication and advised starting therapy. (AR 297.) Nor did the ALJ discuss a February 13, 2015 treatment note (the same date as the Medical Source Statement), in which Dr. Bonnici prescribed anxiety medication, continued mood stabilization medication, and indicated that Plaintiff was in crisis

7

stabilization at Didi Hirsch from January 28 through February 4, where he received individual therapy, social skills, and anger management to assist in resolving "current crisis needs." (AR 108, 312.) Further, the ALJ did not discuss how these treatment notes did not support the GAF score of 30 or Dr. Bonnici's opinion. Accordingly, the ALJ's conclusory and incomplete statement that Dr. Bonnici's findings did not support a disabling condition is not a specific and legitimate reason supported by substantial evidence. *See Reddick*, 157 F.3d at 725 (ALJs satisfy substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings").

An ALJ may also discount a treating physician's opinion when it is "unsupported by the record as a whole or by objective medical findings." *Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (citation omitted). Here, the ALJ merely pointed out that Plaintiff generally performed well on the mental status examinations and did not discuss how a history of psychiatric hospitalizations, repeated references to anger issues and lack of impulse control, and GAF scores of 20-35 from Olive View, Penn Mar and Cornerstone did not support Dr. Bonnici's opinion. (AR 21, 214-313.) Notably, as the ALJ failed to recognize, Dr. Akins agreed with Dr. Bonnici's assessment of marked limitations in social functioning.[5] (AR 21, 35-36.) While the ALJ need not discuss each piece of evidence in the record, *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003), he is required to view evidence "in light of the overall diagnostic record." *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (citations omitted). The ALJ's selective reference to evidence and misunderstanding of Dr. Akins' opinion leaves the Court with an inadequate basis to conclude that this reason is specific and legitimate and supported

---

[5] The ALJ appeared to rely on an incorrect understanding of Dr. Akins' testimony, noting that "Dr. Akins took issue with ["Dr. Bonnici's assessment], finding the clinical evidence failed to support marked deficits in any area of functioning." (AR 21.)

8

by substantial evidence. *See Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (ALJ cannot selectively rely on some entries in administrative records and ignore others).

Further, the record does not support the ALJ's assertion that Dr. Bonnici merely accepted Plaintiff's subjective complaints at face value and reiterated his allegations, and failed to take into account "other medical reports and opinions." (AR 21.) Dr. Bonnici noted Plaintiff's subjective complaints, but also documented clinical findings and observations. (AR 283-303, 309-13.) Regarding the "other medical reports and opinions" that Dr. Bonnici supposedly ignored, the Court does not know to what the ALJ refers. Other than the medical records from LACDMH, the record contains medical evidence from Plaintiff's psychiatric hospitalization in April 2014, including findings of paranoid thought content; partial insight, judgment and impulse control; moderate danger to others; a diagnosis of mood disorder NOS with psychotic features; and a GAF score of 20. (AR 214-65, 268-82.) The record also contains progress notes from a Cornerstone case worker, including reference to a "heated" incident between Plaintiff and L.A. Family Housing staff that jeopardized his housing and treatment. (AR 289.) Even if Dr. Bonnici did not take these records into account, the ALJ did not explain how they would have changed Dr. Bonnici's opinion, particularly because they appear to support Dr. Bonnici's opinion.

Moreover, even assuming Dr. Bonnici based his opinion largely on Plaintiff's subjective complaints, this was not a valid reason for rejecting Dr. Bonnici's opinion given that the ALJ did not properly discount Plaintiff's complaints, as explained below. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) ("A physician's opinion . . . premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted.") (internal quotation marks omitted) (citation omitted); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (medical

opinion premised on subjective complaints may be disregarded where record supports ALJ in discounting claimant's credibility).

Regarding Dr. Akins' opinion, the ALJ noted that Dr. Akins "took issue" with Dr. Bonnici's opinion, "finding the clinical evidence failed to support marked deficits in any area of functioning," and the GAF score of 30 "did not correspond to [Plaintiff's] clinical presentations." (AR 21.) As discussed above, Dr. Akins found that the record supported a bipolar diagnosis and marked impairment in social functioning, which the ALJ misunderstood. (AR 35-36.) Dr. Akins also testified that he did not give the GAF score much weight because "[t]hirty is exceedingly low[;] that would be somebody who is in a hospital," and the exhibits did not "match up." (AR 42.) Unfortunately, the ALJ did not allow Plaintiff's attorney to question Dr. Akins on what evidence was inconsistent with Dr. Bonnici's opinion or how he arrived at his conclusion that Plaintiff's marked limitations in social functioning translated to no public contact, limited contact with coworkers, and occasional contact with supervisors. [6] (AR 43-47.) The ALJ further found Dr. Akins' opinion "coincide[d] with and support[ed] the . . . medical evidence . . . and the assessment of the State Agency." (AR 22.) The ALJ, however, failed to identify what medical evidence was supported by Dr. Akins' opinion. As discussed above, the psychiatric hospitalization and LACDMH records appear to support Dr. Bonnici's opinion. Furthermore, the State Agency physician opined that Plaintiff was not significantly limited in the ability to interact appropriately with the general public and get along with coworkers or peers, and moderately limited in the ability to accept instructions and respond appropriately to criticism from supervisors. (AR 84-85.) Again, the ALJ did not explain how the State Agency assessment supported Dr. Akins' finding of marked limitations in social functioning and limitations on Plaintiff's ability to

---

[6] The Commissioner's argument that Plaintiff "had ample opportunity to question Dr. Akins" is not well taken. A review of the hearing transcript reveals that the ALJ repeatedly prevented Plaintiff's attorney from questioning Dr. Akins. (AR 39-48.)

10

interact with the public, coworkers, and supervisors. In light of the ALJ's errors, the Court cannot find that Dr. Akins' opinion constitutes substantial evidence here.[7] The Commissioner argues that any error in failing to acknowledge that Dr. Akins found marked deficits in social functioning is harmless because the ALJ's RFC finding would remain the same. (Joint Stmt. at 18.) Based on the record as a whole, the Court cannot conclude that the ALJ's error is inconsequential to the nondisability determination. *See Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (a harmless error is one which is "inconsequential to the ultimate nondisability determination in the context of the record as a whole") (citations omitted).

Remand is warranted on this issue for the ALJ to properly evaluate the medical opinions and determine Plaintiff's mental RFC.

**B.     The ALJ Erred in the Credibility Determination**

Plaintiff next contends that the ALJ erred in discrediting his subjective testimony and statements. (Joint Stmt. at 23-27.) The Commissioner argues that the ALJ's reasons for finding Plaintiff not fully credible are supported by substantial evidence. (Joint Stmt. at 27-35.) For the reasons set forth below, the Court agrees with Plaintiff.

///

///

---

[7] Plaintiff's argument that the ALJ failed to consider Dr. Akins' opinion that he had mild to moderate limitations in concentration and work adjustment is rejected. (Joint St. at 6.) Dr. Akins testified that Plaintiff could perform detailed tasks, but not "the more skilled tasks." (AR 37.) The ALJ's hypothetical to the VE included the ability to "probably handle detailed tasks," and the VE testified that Plaintiff could perform unskilled work. (AR 22, 63.) In addition, Plaintiff argues that Dr. Akins improperly relied on his level of education to assess his mental functioning. (Joint St. at 6-7.) Plaintiff's counsel, however, clarified Plaintiff's level of education and asked Dr. Akins if that information changed his opinion. (Joint St. at 39.) Dr. Akins testified that it "put[ ] a different light on things," but he did not see support in the record for "significant problems with concentration." (Joint St. at 39.) Thus, Dr. Akins considered Plaintiff's correct level of education.

11

### 1. *Plaintiff's Testimony*

Plaintiff testified that he has a ninth grade education and took a vocational carpentry course. (AR 49.) He worked in construction from 2001 to 2003, "until the market was not conducive to construction anymore." (AR 49.) In 2009, he worked as a debt negotiator, calling people to collect debts. (AR 50.) After eight to nine months, he was terminated for getting into an argument with his manager. (AR 51.) Thereafter, he actively tried to get work, but he was consistently fired because he could not get along with others. (AR 53.) He had ongoing problems getting along with management, coworkers, and the public. (AR 57.) In the last ten years, he had ten to 14 jobs, and he was terminated from all of these jobs after six to nine months for an attitude problem. (AR 58.) When he could not hold a job, he ended up in jail for battery, drug possession, and traffic offenses. (AR 54.) Regarding his marijuana use, Plaintiff testified that he has been using medical marijuana for years, and he was, at the time of the hearing, using it once a day under his doctor's prescription. (AR 55.) The marijuana immediately calms him down, whereas his other medications take an hour and a half to start working. (AR 59-60.) He has been under the care of Dr. Bonnici for about a year, and he sees him one or two times a month for about an hour or hour and a half. (AR 58.) He takes the medications that are prescribed. (AR 59.) He also sees a social worker once or twice a week at Cornerstone, and sees a social worker daily through L.A. Family Housing. (AR 58-59.) Prior to his psychiatric hospitalization in April 2014, he was hospitalized in Florida at least three or four times, and he received psychiatric care when he was in prison. (AR 59.) Plaintiff spends his days trying to keep to himself. (AR 60.) He goes to his programs in the morning to meet with his counselors, goes to Cornerstone on some days, and otherwise stays in his room. (AR 60-61.) He does not participate in therapy when it requires interacting with other people, which occurs about six or seven times a month. (AR 61.) He believes he cannot work because he is violent, "[a]nd my attitude and my temper is a very large part of my issue." (AR 56.) He testified that his anger

"shuts me down." (AR 56.) He could not work at a job that does not deal with the public because he has problems being by himself and with people. (AR 57.)

### 2. *Applicable Legal Standards*

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina*, 674 F.3d at 1112 (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036) (internal quotation marks omitted). If so, and if the ALJ does not find evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony regarding the severity of his symptoms. *Id.* The ALJ must identify what testimony was found not credible and explain what evidence undermines that testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "General findings are insufficient." *Lester*, 81 F.3d at 834.

### 3. *Discussion*

"After careful consideration of the evidence," the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (AR 20.) The ALJ relied on the following reasons: (1) lack of supporting objective evidence; (2) non-compliance with medication; (3) successful treatment; (4) evasiveness; and (5) activities of daily living. (AR 20-21.) No malingering allegation was made, and therefore, the ALJ's reasons must be "clear and convincing."

///

///

13

### a. Lack of Supporting Objective Evidence

The ALJ discounted Plaintiff's credibility because of the lack of supporting objective evidence. (AR 20.) The lack of supporting objective medical evidence cannot form the sole basis for discounting testimony, but it is a factor that the ALJ may consider in making his or her credibility determination. *See Burch*, 400 F.3d at 681. The ALJ noted that Plaintiff submitted no evidence pre-dating 2014, he generally did well on mental status testing, and he "show[ed] no signs of active psychosis or chronic issues with mood, behavior or cognitive functioning" with intermittent outpatient treatment.[8] (AR 20.) Regarding the lack of evidence before 2014, the ALJ incorrectly relied on the original 2010 alleged disability onset date, and not 2014, which Plaintiff amended at the hearing. With respect to Plaintiff's testing and signs of psychosis or chronic issues with mood, behavior or cognitive functioning, the treating physician and the medical expert agreed that the clinical findings support Plaintiff's bipolar diagnosis and marked impairments in social functioning. (AR 35-36, 297, 306.) Further, based on Dr. Bonnici's findings, including a GAF score of 30, Plaintiff was treated with psychotropic medication and received ongoing therapy to deal with ongoing psychological issues. (AR 295-303, 309-13.) In July 2014, Plaintiff almost lost his housing because he could not control his temper. (AR 289, 291-92.) The ALJ did not discuss how this evidence did not support Plaintiff's testimony. The Court finds that this reason is not a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's credibility.

///

///

---

[8] To the extent the ALJ discounted Plaintiff's credibility because his treatment was intermittent, the ALJ erred. The ALJ cited no evidence from the record showing that Plaintiff's treatment was intermittent. To the contrary, the record indicates that Plaintiff received regular psychiatric treatment and therapy after his psychiatric hospitalization in April 2014. (AR 268-312.)

### b. Non-Compliance with Medication

The ALJ found that Plaintiff was "less than fully compliant with his prescribed medications," and persisted in his use of non-prescribed marijuana. (AR 20.) The failure to follow a prescribed treatment regimen is a legitimate consideration in evaluating credibility. *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991). However, when failure to take medication for mental health treatment is at issue, the Ninth Circuit has stated, "we do not punish the mentally ill for occasionally going off their medication when the record affords compelling reason to view such departures from prescribed treatment as part of claimants' underlying mental afflictions." *Garrison*, 759 F.3d at 1018 n.24; *see also Walters v. Astrue*, 444 F. App'x 913, 920 (7th Cir. 2011) (whether claimant may have been off his medication determined not to be legally significant fact in determining disability; "people with mental illness often struggle to stay on their drugs because of the adverse side effects"); *Pate-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009) ("a mentally ill person's noncompliance with psychiatric medications can be, and usually is, the result of the mental impairment itself and, therefore, neither willful nor without a justifiable excuse") (internal citations and quotations omitted) (citations omitted).

There are indications in the record that Plaintiff's medication was not delivered, Plaintiff could not afford using the medication as prescribed, and he declined some medication due to side effects. (AR 56, 298, 312.) In addition, given Plaintiff's history of bipolar disorder and psychiatric hospitalizations, the Court cannot rule out that Plaintiff's occasional non-compliance was, at least in part, a result of his bipolar disorder and other psychiatric issues. Regarding Plaintiff's use of marijuana, the ALJ emphasized that it was not prescribed. (AR 20-21.) She failed to acknowledge, however, that Dr. Bonnici supported Plaintiff's use of marijuana, and that by the time of the hearing, the marijuana was prescribed. (AR 55, 318.) The Court finds that this reason is not a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's credibility.

### c. Successful Treatment

The ALJ found that Plaintiff reported "good results when compliant with his medication," as Plaintiff performed well on mental status testing and was "able to navigate the process to obtain more permanent housing." (AR 20-21.) Evidence that treatment can effectively control a claimant's symptoms may be a clear and convincing reason to find a claimant less credible. *See Warre v. Comm'r, of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (stating that "[i]mpairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for SSI benefits.") (citations omitted). The record indicates that medication and mental health treatment helped with anxiety and mood stabilization, although the medication took too long to work and did not calm Plaintiff down soon enough. (AR 60, 283, 309.) In February 2015, Plaintiff reported that Gabapentin was "really working" to help him manage his anxiety symptoms, although a month prior, he needed crisis stabilization at Didi Hirsch. (AR 311-12.) Plaintiff generally performed well on mental status examinations, even during psychiatric hospitalization when he had been off of his medications "for a long time," although there was some improvement with treatment. (AR 215-16, 297-98, 300-01, 309, 312-13.) Regarding the housing process, Plaintiff was assisted by a Cornerstone mental health counselor in filling out the correct paperwork and meeting the housing requirements, and continued to meet with a counselor through L.A. Family Housing. (AR 59, 309.) While the record indicates some periodic improvement, the mere fact that a person "makes some improvement does not mean that her impairments no longer seriously affect her ability to function in a workplace." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) (citation omitted). Some improvement in mental status testing and the ability to secure permanent housing with a counselor's assistance does not discredit Plaintiff's testimony that he is unable to work because he cannot get along with others. This reason is not a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's credibility.

**d.     Evasiveness**

The ALJ found that Plaintiff was evasive with respect to his education, work history, and how he affords to pay for marijuana. (AR 21.) Evasiveness can be a legitimate reason for discounting credibility. *See Anderson v. Sullivan*, 914 F.2d 1121, 1123-24 (9th Cir. 1990) ("[T]he ALJ had substantial evidence on which to find a lack of credibility based on [plaintiff's] evasiveness" when responding to the question of whether he informed the SSA about his two Social Security numbers.). The ALJ noted that Plaintiff testified that he had a 9th grade education,[9] while in the Disability Report, he stated that he had a 12th grade education. (AR 20, 38, 169.) In his admission papers for his psychiatric hospitalization in April 2014, Plaintiff reported that he was "home schooled" up to the 12th grade. (AR 274.) The record also indicates that Plaintiff reported in an initial assessment that he was unsure if he had "legally" completed high school and reported completing three years of college, despite his testimony that he did not complete vocational school. (AR 38, 285.) In discussing both his college and vocational education, Plaintiff reported that he did not have the "paperwork." (AR 38, 285.) The ALJ also noted that when motivated by the birth of his child, Plaintiff was able to maintain steady employment. (AR 20-21.) Regarding paying for marijuana, Plaintiff testified that he pays for the marijuana out of his General Relief money. (AR 56.)

With respect to Plaintiff's education, Plaintiff's responses do differ and, although Plaintiff may have been confused about his education, it was not unreasonable for the ALJ to conclude that Plaintiff's inconsistent statements regarding his education negatively impacted his credibility. The ALJ's finding that Plaintiff was evasive about his work history and paying for the marijuana, however, is not supported by substantial evidence. The ALJ failed to acknowledge that it was

---

[9] Plaintiff testified that he "officially only made it to ninth grade and once I made it to ninth grade I was involved in situations that got me kicked out of school so I never returned to school." (AR 38.)

17

five years prior to the alleged disability onset date when Plaintiff was working full time, the job lasted only eight to nine months because he was fired for getting into an argument with his manager, and Plaintiff was consistently unable to keep subsequent jobs because he could not get along with others. (AR 50-51, 53.) The ALJ concluded that Plaintiff "failed to show that a chronic psychiatric condition has impacted his ability to sustain employment" because his problems interacting appropriately with a manager caused his job to end. (AR 21.) Instead of viewing the argument with the manager as related to Plaintiff's mental impairments, the ALJ assumed it was an isolated incident, which is not supported by the record. Regarding how Plaintiff pays for marijuana, Plaintiff testified that he uses his General Relief money. (AR 56.) While the ALJ reasonably considered Plaintiff's inconsistent statements regarding his education when weighing credibility, she did not properly discount Plaintiff's credibility based on evasiveness about his work history and paying for his marijuana.

### e. **Activities of Daily Living**

The ALJ discounted Plaintiff's credibility on the ground that there was "no indication that [Plaintiff] is incapable of caring for his personal needs or performing daily living activities." (AR 21.) The ALJ noted that Plaintiff "appears capable of getting around on his own and he was recently able to obtain subsidized housing." (AR 21-22.) Inconsistencies between symptom allegations and daily activities may act as a clear and convincing reason to discount a claimant's credibility, *see Tommasetti*, 533 F.3d at 1039; *Bunnell*, 947 F.2d at 346, but a claimant need not be utterly incapacitated to obtain benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The fact that Plaintiff could care for his personal needs, get around on his own, and obtain subsidized housing with assistance does not detract from his overall credibility, as the record does not show that these activities consumed a substantial part of Plaintiff's day. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). The ALJ failed to explain how any of these activities reflect on his mental ability to perform work, particularly with others, on a sustained basis. The Court finds that this

reason is not a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's credibility.

In sum, only one of the ALJ's reasons for discounting Plaintiff's credibility – inconsistent statements regarding his education – is clear and convincing and supported by substantial evidence. The Court must decide whether the ALJ's reliance on the other reasons for discounting Plaintiff's credibility was harmless error. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). The relevant inquiry "is not whether the ALJ would have made a different decision absent any error," but whether the ALJ's decision is still "legally valid, despite such error." *Id*. The "remaining reasoning *and ultimate credibility determination* [must be] . . . supported by substantial evidence in the record." *Id*. (emphasis in original) (citing *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)). Here, the Court finds that in light of the record as a whole, substantial evidence does not support the ALJ's credibility finding. Accordingly, remand is warranted on this issue.

### C. Remand for Further Administrative Proceedings

Because further administrative review could remedy the ALJ's errors, remand for further administrative proceedings, rather than an award of benefits, is warranted here. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (remanding for an award of benefits is appropriate in rare circumstances). Before ordering remand for an award of benefits, three requirements must be met: (1) the Court must conclude that the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the Court must conclude that the record has been fully developed and further administrative proceedings would serve no useful purpose; and (3) the Court must conclude that if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Id*. (citations omitted). Even if all three requirements are met, the Court retains flexibility to remand for further proceedings "when the record as a whole creates serious doubt as

to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* (citation omitted).

Here, remand for further administrative proceedings is appropriate. On remand, the ALJ shall (1) reassess Dr. Bonnici's treating opinion in light of a correct reading of the medical evidence, including Dr. Akins' opinion, and provide legally adequate reasons for discounting or rejecting any portion of the opinion; (2) reassess Plaintiff's subjective allegations in light of Social Security Ruling 16-3p—Evaluation of Symptoms in Disability Claims, 2016 WL 1119029 (S.S.A. Mar. 16, 2016), which would apply upon remand; and (3) if necessary, reassess Plaintiff's RFC. The ALJ shall then proceed through steps four and five to determine what work, if any, Plaintiff is capable of performing.

## V. CONCLUSION

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter for further proceedings consistent with this Order.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: May 9, 2017

ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

### NOTICE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**

20